IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BRUCE CARLSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 04 C 8201 |
| MUNDELEIN POLICE OFFICERS ) | |
| R.A. BELL (#230), DEVORE (#210), and ) | |
| MUNDELEIN POLICE DEPARTMENT, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Plaintiff Bruce Carlson filed the present Second Amended Complaint bringing federal and state law claims of excessive force, false arrest, intentional infliction of emotion distress, assault and battery, and malicious prosecution against Defendant Police Officers R.A. Bell and Devore and the Mundelein Police Department. Before the Court is Defendant Police Officers' Motion for Partial Summary Judgment pursuant to Federal Rule of Civil Procedure 56(c). For the following reasons, the Court denies Defendant Officers' motion.

## BACKGROUND

On December 26, 2003, after receiving greasy pizzas from a Pizza Hut restaurant, Carlson called the Pizza Hut to explain his dissatisfaction at which time the manager told Carlson to bring the pizzas back to the restaurant. (R. 22-1, Pl.'s Rule 56.1 Add. Stmt. Facts. ¶ 1.)[1] Carlson also requested that the manager call the police because he did not want any

---

[1] Although Reply Briefs were due on October 12, 2005, Defendants have yet to file their Reply Brief. Consequently, because Defendants failed to controvert Plaintiff's Additional Statement of Facts, Plaintiff's additional statements are deemed admitted. *See Brengettcy v.*

problems. (*Id.* ¶ 2, Carlson Dep., at 36.) Thereafter, Paul Francisco, a Pizza Hut employee, called the police. (*Id.* ¶ 3; R. 16-1, Def.'s Local Rule 56.1 Stmt. ¶¶ 1, 2.) According to a Mundelein Public Safety Incident Report dated December 26, 2003, an "irrate" person had called concerning a bad order and that the person was en route to the Pizza Hut to "yell some more" and that they should call the police. (Def.'s Stmt. ¶¶ 1, 2, Ex. 1.) Defendant Officer Bell, who responded to the dispatch, testified at his deposition that he did not see this Safety Incident Report until January 2005 – over two years following the incident. (*Id.* ¶¶ 2,3; Pl.'s Resp. to Def.'s Stmt. ¶ 2.)

Defendant Officer Bell was the senior officer at the scene and Officer Devore, a probationary officer, was Officer Bell's back up. (Def.'s Stmt. ¶ 3.) Upon the officers' arrival inside the Pizza Hut, Carlson approached them. (*Id.* ¶ 4; Pl.'s Resp. to Def.'s Stmt. ¶ 4.) At that time, the officers did not see anyone screaming or any fighting. (Pl.'s Addl. Stmt. ¶ 6.) In his affidavit, Officer Bell averred that Carlson did not identify himself and also that he did not know what Carlson had in his hand when he approached the officers. (Def.'s Stmt. ¶ 4, Ex., 2, ¶ 5.) In his deposition testimony, however, Officer Bell testified that Carlson immediately identified himself when the police arrived at the Pizza Hut. (Pl.'s Addl. Stmt. ¶ 17.)

Furthermore, although Officer Bell averred that Carlson approached him with an unidentified object in his hand, at his deposition Officer Bell testified that Carlson informed him that he was going to record the conversation. (Pl.'s Resp. to Def.'s Stmt. ¶ 4, Bell Dep., at 163-65.) In addition, Officer Bell testified that he saw something in Carlson's hand, but was not sure it was a tape recorder although he did see the red recording light. (*Id.*) The officers did not ask

---

*Horton,* 423 F.3d 674, 681 (7th Cir. 2005); *Smith v. Lamz,* 321 F.3d 660, 683 (7th Cir. 2003).

2

Carlson to relinquish the recorder or put it down. (Pl.'s Addl. Stmt. ¶ 8.) Instead, when Carlson did not turn off the recorder, the officers slammed Carlson against the counter and arrested him for obstructing a peace officer. (*Id*. ¶ 7.) The police officers then took Carlson into custody and handcuffed him. (Def.'s Stmt. ¶ 5; Pl.'s Addl. Stmt. ¶ 9.) Subsequently, the police removed Carlson from the premises. (Def.'s Stmt. ¶ 5.)

Officer Devore took Carlson to the police station while Officer Bell conducted the investigation into the disorderly conduct charge. (Pl.'s Addl. Stmt. ¶ 10.) Officer Bell interviewed Victor Moreno, the manager of the Pizza Hut, and Tracy Pennington, a customer. (Def.'s Stmt. ¶ 6, Pl.'s Addl. Stmt. ¶ 9.) In his affidavit, Officer Bell avers that Moreno and Pennington told him that Carlson was yelling and slamming pizza boxes and his hands on the counter. (*Id.* ¶ 7, Ex. 2, ¶ 8.) Moreno, however, testified at his deposition that Carlson had "raise[d] his voice up to the point of almost yelling." (*Id*. ¶ 7, Pl.'s Resp. to Def.'s Stmt. ¶ 7.) Moreno also testified that while Carlson was waiting for the police to arrive, Carlson stood back and to the side so Moreno could deal with customers. (Pl.'s Addl. Stmt. ¶ 5, Moreno Dep., at 19-20.) Also, Moreno testified that he was not frightened by Carlson's actions and that Carlson was just a dissatisfied customer. (*Id*. ¶ 13.) Furthermore, when the officers asked Moreno if he wanted to press charges against Carlson, he said no. (*Id*. ¶ 15.)

Officer Bell interviewed Pennington and averred that Pennington was extremely upset and her hands were shaking. (Def.'s Stmt. ¶ 8.) At her deposition, Pennington explained that she was scared of the whole atmosphere at the Pizza Hut, including the police arresting Carlson. (Pl.'s Resp. to Def.'s Stmt. ¶ 8, Pennington Dep., at 109-110.)

In the end, the police charged Carlson with municipal ordinance violations of disorderly

3

conduct and obstructing a peace officer. (Def.'s Stmt. ¶ 9, Ex. 2, ¶ 11.) The ordinance violation charges were eventually dismissed. (R. 15-1, Def.'s Mot. for Partial Summ. J., at 13.)

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A genuine issue of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). In determining whether a genuine issue of material fact exists, the Court construes all facts in a light most favorable to the non-moving party and draws all reasonable inferences in favor of that party. *Id.* at 255. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The existence of a factual dispute is not sufficient to defeat a summary judgment motion, instead the non-moving party must present definite, competent evidence to rebut the summary judgment motion. *Butts v. Aurora Health Care, Inc.,* 387 F.3d 921, 924 (7th Cir. 2004).

## ANALYSIS

In Count II of the Second Amended Complaint, Carlson brings a false imprisonment claim pursuant to the Fourth Amendment made applicable to the states by virtue of the Fourteenth Amendment. *See* 42 U.S.C. § 1983. Section 1983 provides a cause of action against any person who, acting under color of state law, deprives another person of a right, privilege, or

immunity secured by the United States Constitution or federal laws.  *See* 42 U.S.C. § 1983; *Lekas v. Briley,* 405 F.3d 602, 606 (7th Cir. 2005).  The existence of probable cause to arrest precludes a Section 1983 lawsuit for false imprisonment.  *Morfin v. City of East Chicago,* 349 F.3d 989, 997 (7th Cir. 2003) (citations omitted).  Indeed, the existence of probable clause precludes the common law actions of false arrest and imprisonment and malicious prosecution as alleged in Counts IV and VI of the Second Amended Complaint.  *See Cult Awareness Network v. Church of Scientology Int'l,* 177 Ill.2d 267, 272, 226 Ill.Dec.604, 685 N.E.2d 1347, 1350 (1997); *Johnson v. Target Stores, Inc.,* 341 Ill.App.3d 56, 73, 274 Ill.Dec. 795, 791 N.E.2d 1206 (Ill.App.Ct. 2003).  The Court thus turns to the legal basis for Carlson's arrest.

"[P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity."  *Illinois v. Gates,* 462 U.S. 213, 243 n. 13, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983).  To have probable cause for an arrest, police officers must reasonably believe, in light of the facts and circumstances within their knowledge at the time, that the suspect has committed or was committing a crime.  *United States v. Parra,* 402 F.3d 752, 763-64 (7th Cir. 2005) (citations omitted); *see also Gates*, 462 U.S. at 232 (probable cause "turn[s] on the assessment of probabilities in particular factual contexts – not readily, or even usefully, reduced to a neat set of legal rules").

Here, Defendants argue that they "were responding to a call of an irate subject who was supposed to be on his way to a local Pizza Hut restaurant.  Upon their arrival, they encountered such a subject.  The eyewitnesses described the individual's conduct as having alarmed and disturbed them."  (R. 15-1, Def.'s Mot. for Partial Summ. J., at 12.)  Defendants conclude that based "upon these indisputable facts, it may therefore not reasonably be questioned that officers

Bell and Devore had ample grounds to believe that the offense of disorderly conduct had been committed by the plaintiff." (*Id.*) Defendants' perfunctory argument and Officer Bell's bare-boned averments in his affidavit, however, do not establish that there are no genuine issues of material fact and that Defendants are entitled to judgment as a matter of law. *See Celotex Corp.*, 477 U.S. at 323.

Instead, at this procedural posture, the Court must construe the facts and all reasonable inferences in favor of Carlson. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 255. Here, Carlson has set forth definite, competent evidence creating genuine issues of material fact as to Defendant Bell's characterization of the events occurring on December 26, 2003. *See Butts,* 387 F.3d at 924. First, as Defendants admit in their legal memorandum, the police officers arrested Carlson almost immediately after they arrived at the Pizza Hut. (R. 15-1, Def.'s Mot. for Partial Summ. J., at 3.) Indeed, the facts in the record reveal that the police officers had already arrested Carlson for obstructing a peace officer before Officer Bell interviewed Moreno and Pennington regarding the disorderly conduct charge. Thus, the Court cannot consider Moreno's and Pennington's statements when determining the officers' legal basis for probable cause because the Court must examine the facts known to the officers at the time they arrested Carlson for obstructing a peace officer. *See Devenpeck v. Alford,* 543 U.S. 146, 125 S.Ct. 588, 593, 160 L.Ed.2d 537 (2004).

The pertinent Mundelein Municipal Ordinance, Resisting or Obstructing Public Officer Prohibited, states: "A person who knowingly resists or obstructs the performance by one known to the person to be a peace officer of any authorized act within his or her official capacity shall be guilty of resisting or obstructing a public officer." *See* Mundelein Ord. 9.60.330. Defendants

base their probable cause determination for the obstruction charge on the fact that an "irate" customer was on his way to the Pizza Hut – as described in the Mundelein Public Safety Incident Report. Officer Bell admitted at his deposition, however, that he had not seen this report until well over two years after the incident took place.

As such, the Court is left with the facts that when the officers entered the Pizza Hut, they did not see anyone screaming or any fighting. At that time, Carlson immediately identified himself to the officers. Although Officer Bell averred that he did not know what was in Carlson's hand, Officer Bell later testified at his deposition that Carlson informed him that he was going to record the conversation. Officer Bell also testified that he saw the red light of the recorder. Finally, when Carlson did not turn off the recorder, the officers slammed Carlson against the counter and arrested him for obstructing a peace officer. The officers, however, did not ask Carlson to relinquish the recorder or to put it down.

In sum, Carlson has rebutted the officers' allegations that he approached them in an "aggressive manner" with an unknown object in his hand with competent evidence to the contrary. Therefore, there is a genuine issue of material fact whether the officers had probable cause to arrest Carlson for obstructing a peace officer.

## CONCLUSION

For these reasons, the Court denies Defendants' Partial Motion for Summary Judgment.

The Court denies Plaintiff's Motion to Strike as moot.

Dated: November 22, 2005

                              **ENTERED**

                              _____
                              **AMY J. ST. EVE**
                              **United States District Court Judge**